**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DENISE M. HENNING, CPA LLC, individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No. 2:20-cv-00905-WSS |
| v. | : | |
| | : | Judge William S. Stickman |
| PNC FINANCIAL SERVICES GROUP, INC.; PNC BANK, N.A.; and DOES 1 through 100, inclusive, | : | |
| | : | |
| Defendants. | : | |

**<u>DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS</u>**

## PRELIMINARY STATEMENT

This action concerns the Paycheck Protection Program (the "PPP"), an emergency

loan program created by the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-

136 (the "CARES Act").  The PPP provides assistance to small businesses that have been affected

by the COVID-19 pandemic.  To date, more than 4.9 million borrowers have received nearly

$517 billion in emergency relief.  U.S. Small Business Administration (the "SBA"), *Paycheck*

*Protection Program (PPP) Report* (July 10, 2020).  The loans are processed and funded by

private lenders, who receive a statutorily mandated processing fee from the government for each

funded loan on which no or only one percent interest can be charged.

Plaintiff Denise M. Henning, a Pennsylvania-based accountant, has sued PNC

Bank, N.A., one of those lenders, and PNC Financial Services Group, Inc. (together, "PNC") in

an effort to divert an unspecified sum of statutory PPP fees from PNC and 100 other unnamed

lenders to unknown third parties.  On behalf of all "agents," she demands that lenders pay *every*

person who even *claims* to have helped a borrower obtain a PPP loan—regardless of whether the

"agent" had any kind of agreement with that lender.  Henning's claim is based on a flawed

reading of the CARES Act and its implementing regulations.[1]

The barebones complaint must be dismissed for several reasons.  First, Henning

cannot pursue statutory relief under the CARES Act.  Although Henning seeks a declaration "in

---

[1] This action is one of numerous actions filed around the country by some of the plaintiff's counsel here making similar claims against different banks.  All together at least 33 suits have been filed against various PPP lenders by plaintiff's counsel and others, and a petition to consolidate the actions pursuant to 28 U.S.C. § 1407 is pending before the Judicial Panel on Multidistrict Litigation.  PNC has opposed the proposed MDL because of the lack of overlapping factual issues and believe this matter can be disposed of promptly given the clear lack of a legal claim.  In the alternative, PNC, which has been named as a defendant in four such actions, has proposed a PNC-specific MDL before this Court.

accordance with SBA regulations," she cannot pursue declaratory relief because the CARES Act does not provide for a private right of action.  Regardless, under the CARES Act and related regulations, lenders have no duty to pay unauthorized agents.  The statute and regulations merely impose *limits* on the fees that agents may collect *if* there is an agreement with the lender to pay them.  By contrast, there is a clear statutory mandate that lenders, not agents, "shall" be paid set processing fees.  The regulations do not, and cannot, undo that mandate by requiring lenders to pay *borrowers'* agents when the *lender* did not agree to pay them.  On the contrary, existing SBA regulations designed to combat fraud by purported agents *prohibit* any payment to agents absent a written agreement among the borrower, lender, and agent.  Because Henning does not allege any such agreement, payments to her are prohibited as a matter of law.

Second, Henning cannot pursue statutory relief under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") because (1) she is not a "purchaser" or "lessor" and, even if she were, plainly did not purchase or lease a good or service for personal, family or household use and (2) she did not *rely* on PNC's, or any other lender's, conduct.  In fact, as other purported agents who have sued PNC have noted, PNC explicitly told would-be agents alike that it "will not pay Agents for assistance they may provide an applicant in obtaining a PPP loan."[2]

Finally, Henning fails to establish any of her common-law claims for conversion, breach of contract, and unjust enrichment.  Among other reasons, the common law for each of these claims requires, at a minimum, that a plaintiff demonstrate some right to the property at

---

[2] PNC's "Paycheck Protection Program," https://www.pnc.com/en/customer-service/paycheck-protection-program.html (last accessed July 17, 2020).  *See also* Compl. ¶ 35 (alleging, on information and belief, that PNC has refused to pay agent fees).

issue.  Here, Henning cannot plead such a right because neither the CARES Act nor the PPP regulations require lenders to pay agent fees to unknown third parties.

In short, unauthorized agents have no claim to the statutory fees that lenders are paid as part of the federal pandemic response.  The complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

### A.     The Coronavirus Pandemic and the CARES Act

The CARES Act was enacted on March 27, 2020, just two weeks after the World Health Organization recognized the COVID-19 pandemic.  The purpose of the new law was to provide "emergency assistance and health care response for individuals, families and businesses affected by the coronavirus pandemic."  Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,811 (Apr. 15, 2020) (the "First IFR").

As part of that relief, Congress established the PPP to provide emergency loans to small businesses.  The PPP, like other federal loan programs for small businesses, was codified in Section 7(a) of the Small Business Act.  Under the PPP, the SBA guarantees 100% of loans made by SBA-approved lenders to eligible borrowers.  The SBA also reimburses lenders for the cost of making and administering PPP loans by paying a mandatory loan-processing fee that depends on the size of the loan.  *See* 15 U.S.C. § 636(a)(36)(P)(i).  The statutory language is express:  "The [SBA] *shall* reimburse a lender authorized to make a covered loan at a rate" set by the statute.  *Id.*[3]  Lenders, however, are limited on the amount of interest they can charge, ranging from none, if the loan is forgiven pursuant to the PPP program, or one percent if the loan is paid back over the course of two years.  *See* 85 Fed. Reg. at 20,813.

---

[3] Unless otherwise noted, emphases are added.

In contrast, the CARES Act does not specify if, how, or by whom *agents* may be paid.  The statute addresses agent fees in a single paragraph, entitled "FEE LIMITS."  *Id.* § 636(a)(36)(P)(ii).  That provision instructs that agents "may not collect a fee in excess of the limits established by the [SBA]," to the extent they may be paid at all.  *Id.*  Congress did not adjust any other terms applicable to agents under the Section 7(a) loan program or direct the SBA to do so.

### B.      The Regulatory Background

On April 2, 2020, hours before the PPP application window opened, the SBA issued the First IFR to provide guidance on the operation of the program.  As directed by Congress, the SBA set clear limits on the "total amount that an agent may collect" for "assistance in preparing an application for a PPP loan."  85 Fed. Reg. at 20,816.  Under the First IFR, total agent fees "may not exceed" (i) 1% for loans up to $350,000, (ii) 0.5% for loans of more than $350,000 and less than $2 million, and (iii) 0.25% for loans of at least $2 million.  *Id.*  The First IFR also provides that agent fees, to the extent they are paid at all, will be paid by the lender.  *Id.* Likewise, an informal Information Sheet issued by the Department of the Treasury reiterates that PPP agent fees (such as they may be) "will be paid out of lender fees."  Dept. of Treas., *Paycheck Protection Program (PPP) Information Sheet Lenders*.[4]

Like the CARES Act, neither the First IFR nor the Information Sheet states that lenders *must* pay any person who purports to be an agent of a customer.  Nor could they, given the statute's requirement that lenders "shall" be paid the processing fee set forth in the CARES Act.  Moreover, because the PPP is an extension of the Small Business Act's Section 7(a) Loan

---

[4] https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet. pdf (last accessed July 17, 2020).

Guarantee Program, it is subject to all the "same terms, conditions, and processes" as other

Section 7(a) loans—including with respect to agents—unless those terms, conditions, or

processes are expressly abrogated by the CARES Act.  15 U.S.C. § 636(a)(36)(B); *see also* 85

Fed. Reg. at 20,812 (describing the PPP as a "new 7(a) loan program").

   Existing SBA regulations *prohibit* any payment to agents absent a written

"compensation agreement" among the borrower, lender, and agent.  13 C.F.R. § 103.5(a).  Thus,

on June 30, 2020, Treasury Secretary Steven Mnuchin testified in a House committee hearing

that, under the guidance issued by the Treasury, any payments from lenders to agents were

"intended to be based upon a contractual relationship between the agent and the bank."

*Oversight of the Treasury Dept.'s and Federal Reserve's Pandemic Response: Hearing on H.R.

6800, H.R. 6852 and H.R. 7046 Before the H. Comm. on Fin. Servs.*, 116th Cong. (2020)

(statement of Hon. Steven Mnuchin, Sec'y, U.S. Dept. of the Treasury).

  **C.**  **Henning Had No Reason to Believe She Would Be Paid Agent Fees.**

   Henning does not allege PNC ever agreed to pay agent fees for PPP loans, much

less that they would pay for unsolicited work performed by self-declared agents.  In fact, shortly

after the First IFR was issued, PNC began giving conspicuous notice that it would *not* pay

customers' agents in connection with PPP loans.  In the first week of April, PNC stated that it

"will not pay Agents for assistance they may provide an applicant in obtaining a PPP loan."[5]

And, as a litigant in another case against PNC has alleged, PNC included a similar disclaimer on

its PPP application.[6]  Other banks did so as well.  For example, Bank of America, N.A. (not

---

[5] https://www.pnc.com/en/customer-service/paycheck-protection-program.html (last accessed July 17, 2020).

[6] *See Lowry* v. *U.S. Bancorp, et al.*, No. 1:20-cv-00348-MWM (S.D. Ohio), Dkt. 36 ¶ 54 (alleging "PNC's electronic application for PPP funds specifically indicated that PNC would not be paying Agent Fees.").

named here, but named in other PPP agent fee suits) stated that "[i]n the absence of a preloan approval written agreement between the agent and Bank of America, Bank of America does not pay fees or other compensation to agents who represent or assist borrowers."[7]

All of this is common knowledge in Henning's field.  Just days after the First IFR was published, the Association of International Certified Public Accountants (the "AICPA") warned potential agents that neither the CARES Act nor the related guidance requires lenders to pay agent fees absent a written agreement with the lender:  "CPAs should note, that even though the Treasury has outlined guidelines related to agency fees, there is a possibility that you will not be paid for your services." Ex. 1.[8]  Accordingly, the AICPA recommended that potential agents "discuss this issue with clients and the banks to ensure there is an understanding, preferably in writing, as to how and when any fees will be paid." *Id.*

### D.    Henning Sues Over 100 Lenders on Behalf of All Purported Agents.

On June 17, 2020, Henning filed this action seeking to recover an unspecified sum on behalf of all purported agents who "provided assistance" to PNC's PPP loan borrowers.[9] Compl. ¶ 51.  Henning repeatedly references her PPP "clients" yet only mentions a single unidentified borrower who she claims she assisted and who allegedly received a PPP loan from

---

[7] https://about.bankofamerica.com/promo/assistance/faqs/small-business-paycheck-protection-program (last accessed July 17, 2020).

[8] Submitted herewith is the Declaration of Perry A. Napolitano.  References to "Ex. 1" refer to the exhibit to the Napolitano Declaration.  On a motion to dismiss, a court may take judicial notice of "reports published by industry or consumer organizations."  *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *4 (E.D.N.Y. Aug. 29, 2013); *see also In re Bear Stearns Cos., Sec., Derivative & ERISA Litig.*, 763 F. Supp. 2d 423, 582 (S.D.N.Y. 2011) (taking notice of industry reports).

[9] Despite also bringing suit against 100 unnamed lenders, Henning defines her putative classes as persons and businesses who "served as an agent in relation to, and provided assistance to a client in relation to, the preparation and/or submission of a client's PPP loan application to *PNC Bank* which resulted in a loan being funded under the PPP."  Compl. ¶ 51.

PNC.  *Id.* ¶¶ 45-48.  For this alleged assistance, Henning claims she is entitled to the maximum agent fee allowable under the CARES Act, approximately $565.  *Id.*

The rest of Henning's complaint is similarly vague.  For example, Henning alleges that she had the "primary role in calculating the payroll information needed for the application, and providing [her] clients' accounting information, advice, documentation [sic] in support of the PPP loan application."  *Id.* ¶ 47.  Yet she does not say how many loan applications *she* allegedly submitted, on behalf of which applicants, to which lenders, or whether more than one of her clients actually received a PPP loan.  Similarly, Henning does not allege that she ever communicated with or sought authorization from PNC (or any other lender), that her actions were in fact authorized by PNC, that PNC was aware of her actions, or that she even *requested* compensation from PNC.

Nevertheless, citing the CARES Act, the First IFR, and the Information Sheet, Henning asserts that lenders have engaged in a "deliberate scheme" to deprive PPP agents of "statutorily mandated compensation."  *Id.* ¶¶ 8, 31-33, 50.  On that basis, Henning brings claims for supposed violations of the CARES Act, the PPP regulations, and UTPCPL as well as Pennsylvania common-law claims for conversion, breach of contract, and unjust enrichment.

## ARGUMENT

## I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CARES ACT.

### A.    The CARES Act Does Not Create a Private Right of Action.

Henning seeks a "declaration[] in accordance with SBA regulations" that defendants are obligated to pay agents "for the work performed on behalf of [the agent's] client[s]."  Compl. ¶ 64.  Even if lenders had such an open-ended payment obligation (they do not, *see* Point II.B), Henning could not pursue declaratory relief unless the CARES Act creates a private right of action on behalf of agents.  *See Levy-Tatum* v. *Navient Sols., Inc.*, 183 F. Supp.

3d 701, 709 (E.D. Pa. 2016) ("[T]he Declaratory Judgment Act 'does not authorize actions to decide whether federal statutes have been or will be violated when no private right of action to enforce the statutes has been created by Congress.'") (citation omitted).

The CARES Act contains no express language conferring a private right of action on agents.  And Henning, who has the burden of demonstrating that Congress intended to create an implied private right of action (*Suter* v. *Artist M.*, 503 U.S. 347, 363 (1992)), does not allege an implied right, nor could she.  As the Supreme Court has made clear for two decades or more, "[P]rivate rights of action to enforce federal law must be created by Congress."  *Alexander* v. *Sandoval*, 532 U.S. 275, 286 (2001).  The Third Circuit recognizes that "a court may find such a right implied only where it can *confidently conclude* Congress so intended."  *American Trucking Ass'n, Inc.* v. *Delaware River Joint Toll Bridge Comm'n*, 458 F.3d 291, 303 (3d Cir. 2006) (emphasis in original) (citation omitted).  In evaluating Congressional intent, the Third Circuit looks for "'rights-creating'" language which "is explicit in conferring a right [of action]."  *Doe* v. *Pennsylvania Bd. of Prob. & Parole*, 513 F.3d 95, 104 (3d Cir. 2008) (citation omitted).

Indeed, numerous courts have concluded that the loan programs under the Small Business Act do not create private rights of action. And, the one court to consider the PPP—in a case brought by potential borrowers—concluded that the CARES Act did not do so as well.  *See Profiles, Inc.* v. *Bank of Am. Corp.*, No. SAG-20-0894, 2020 WL 1849710, at *7 (D. Md. Apr. 13, 2020) (holding there is no express or implied private right of action for potential borrowers under the CARES Act:  "The Court is not persuaded that the language of the CARES Act evidences the requisite congressional intent to create a private right of action.").  If there is no private right of action for borrowers under the statute, *a fortiori* there is no private right of action for agents.  And since there is no private of action under the statute, even if the "SBA regulations"

contained language creating such a right (they do not), an agency "may not create a right that Congress has not." *Sandoval*, 532 U.S. at 291.

   **B.**   **Agents Are Not Entitled to Fees Under the CARES Act or Related Guidance.**

Even if Henning could pursue declaratory relief, her entire case rests on the baseless claim that PPP lenders must pay for work that agents performed "on behalf of [their] client[s]," even if those purported agents have no agreement with the lenders. Lenders have no such payment obligation. To hold otherwise would conflict with the unambiguous language of the CARES Act, PPP-related guidance, the broader regulatory scheme, settled common law, and the SBA's historical concerns about agent fraud.

   **1.**   **The CARES Act Does Not Create an Entitlement to Agent Fees.**

Although Henning does not quote a single provision of the CARES Act, its plain language bars her claims. *See Lamie* v. *United States Tr.*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.") (citation omitted).

The CARES Act imposes a limit on agent fees; nothing more. Congress directed that "[a]n agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the [SBA] Administrator." 15 U.S.C. § 636(a)(36)(P)(ii). That provision—defining what an agent "may not collect" and directing the SBA to establish "limits"—is the statute's only reference to agent fees. Plainly, a restraint on agents cannot impose an affirmative duty on lenders. *See, e.g.*, *Franklin* v. *Lynch*, No. 3:16-CV-36, 2016 WL 6879265, at *5 (W.D. Pa. Nov. 21, 2016) ("If statutory language is clear, 'it would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope.'") (quoting *University of Texas Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 353 (2013)).

If Congress meant to create a payment obligation, it would have done so expressly.  Indeed, in language conspicuously absent from Henning's complaint, Congress *did* provide that "[t]he [SBA] Administrator shall reimburse a *lender*" at set rates.  15 U.S.C. § 636(a)(36)(P)(i).  There is a stark and purposeful difference in the language used in the CARES Act concerning lenders and agents:  the SBA "*shall* reimburse" lender fees, but agents "*may not* collect" fees in excess of limits set by the SBA.  Where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello* v. *United States*, 464 U.S. 16, 23 (1983).  In short, the CARES Act does not create an entitlement to fees for any agent who claims to have assisted a PPP borrower.  The complaint should be dismissed for that reason alone.[10]

## 2.    The PPP Regulations Do Not Create an Entitlement to Agent Fees.

Henning claims that "[t]he SBA's PPP regulations specifically *require* that PPP lenders pay the fees of any 'agent' that assists with the PPP loan application process."  Compl. ¶ 68.  Not so.  What the SBA regulations actually do, in language *quoted by Henning*, is impose caps on the "total amount that an agent *may* collect."  85 Fed. Reg. at 20,816; *see* Compl. ¶ 33. In addition, to ensure that agent fees would not deplete the emergency funds that Congress intended for borrowers, the SBA directed that "[a]gent fees will be paid by the lender out of the fees the lender receives from the SBA" and that "[a]gents may not collect fees from the borrower or be paid out of the PPP loan proceeds."  85 Fed. Reg. at 20,816.

---

[10] Moreover, as noted above, the CARES Act does not create a private right of action.  *See* Section I.A, *supra*.

Nothing in the PPP regulations or guidance requires lenders to pay agent fees that they did not authorize.  Indeed, any contrary reading would run afoul of the statute, which, as noted, mandates that lenders "shall" be reimbursed in the form of stated processing fees, while agents "may not" be paid above certain amounts.  It is, of course, bedrock administrative law that "regulations, in order to be valid, must be consistent with the statute under which they are promulgated."  *Decker* v. *Northwest Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013) (citation omitted); *see also Lyng* v. *Payne*, 476 U.S. 926, 937 (1986) ("[A]n agency's power is no greater than that delegated to it by Congress.").

      **3.**      **Other SBA Regulations Confirm There Is No Entitlement to Agent Fees.**

Under the CARES Act, the PPP is governed by "the same terms, conditions, and processes" as other Section 7(a) programs, except where the statute directs otherwise.  15 U.S.C. § 636(a)(36)(B); *see also* 85 Fed. Reg. at 20,812 (PPP regulations supersede only "conflicting" Section 7(a) program requirements).  The broader regulatory scheme imposes substantial checks on the role of "agents," including the circumstances under which an agent may be paid.  The PPP-related guidance creates *additional* limits—it does not remove them and certainly does not mandate an unchecked transfer of compensation from lenders (who incurred significant expense to make the PPP loans on an expedited basis) to purported agents.

Henning's argument directly conflicts with this governing regulatory scheme. The SBA does not require borrowers or lenders to use agents in connection with Section 7(a) loans.  *See* 13 C.F.R. § 103.2(a) (borrowers and lenders may "conduct business with SBA without a representative").  But if agents are used, SBA regulations are clear that lenders, agents, and applicants must execute written agreements to govern agent compensation.  *See* 13 C.F.R. § 103.5(a) ("Any Applicant, Agent, or Packager must execute and provide to SBA a

compensation agreement, and any Lender Service Provider must execute and provide to SBA a Lender Service Provider agreement.  Each agreement governs the compensation charged for services rendered or to be rendered to the Applicant or lender in any matter involving SBA assistance.").  Nothing in the CARES Act or rules governing the PPP abrogates this requirement, and Henning makes no claim that any written agreements were ever executed to govern the compensation she now demands.  Indeed, Henning does not allege any agreement with PNC or any other lender or, for that matter, with her purported clients.

Requiring lenders to pay unidentified agents for unauthorized and unverified work would read this basic check out of existence and invite fraud and abuse.  The SBA has recently identified a "pattern of fraud by loan packagers and other for-fee agents in the 7(a) Loan program, involving hundreds of millions of dollars."  U.S. Small Bus. Admin., Off. of the Inspector Gen., *Report on the Most Serious Management and Performance Challenges Facing the Small Business Administration in Fiscal Year 2019*, at 8, 9 (Oct. 11, 2018).[11]  And the reason the SBA requires a written compensation agreement is to prevent "agents" and "loan packagers" from "charging inappropriate or unreasonable fees to applicants or lenders."  Immediate Disaster Assistance Program, 75 Fed. Reg. 60,588, 60,594 (Oct. 1, 2010); *see also* SBA, Lender and Development Company Loan Programs, Standard Operating Procedures (SOP) 50 10 5(K), Subpart B, Ch. 3 at 170 (2019).

Given heightened legislative and regulatory interest in preventing fraud and abuse under the PPP, it would defy common sense to require lenders to pay agents who have no written agreement governing their fees.  Henning's demand for relief here—demanding the maximum

---

[11] https://www.sba.gov/sites/default/files/2019-08/SBA-OIG-Report-19-012.pdf (last accessed July 17, 2020).

fee allowed despite not alleging an agreement to pay a fee, much less a specified amount—illustrates the type of abuse that a written compensation agreement is intended to prevent.  And nothing would prohibit multiple purported agents from claiming fees for work purportedly performed on behalf of a single borrower.

### 4.  The Common Law Confirms There Is No Entitlement to Agent Fees.

Mandating payment of claimed agent fees would also upend settled common law.  By requiring a written agreement between the lender and agent, the SBA makes agent compensation a question of contract.  It is well-established that "[t]here can be no contract without the mutual assent of the parties."  *Utley* v. *Donaldson*, 94 U.S. 29, 47 (1876); *see also* Restatement (Second) of Contracts § 17 ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.").  The agreement is what creates the payment obligation:  "it is inferred that a person promises to pay for services *which he requests or permits another to perform for him* as his agent."  Restatement (Second) of Agency § 441.

By contrast, "one has no duty to pay for services officiously rendered without request although resulting in benefit to him."  *Id.*; *accord* Restatement (First) of Restitution § 2.  "A person is not required to deal with another unless he so desires."  *Id.*  And, "ordinarily, a person should not be required to become an obligor unless he so desires."  *Id.*

The SBA's preexisting regulations reflect these common-law principles.  The SBA generally recognizes three kinds of agents:  (i) lender service providers, who work for and are paid by the lender; (ii) packagers, who are "employed and compensated by the Applicant"; and (iii) loan brokers, who "may be employed and compensated by either the Applicant or the SBA Lender."  13 C.F.R. § 103.1(a).  In each case, the payor requests or agrees to the agent's services.  The complaint does not identify any SBA regulation to the contrary.

The CARES Act does not displace these common-law rules.  The Supreme Court has required that "[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law."  *United States* v. *Texas*, 507 U.S. 529, 534 (1993).  Even then, as to federal statutes, "it is axiomatic that statutes in derogation of the common law should be narrowly construed."  *Badaracco* v. *Comm'r*, 464 U.S. 386, 403 n.3 (1984); *see also Martinez* v. *Bethlehem Steel Corp.*, 78 F.R.D. 125, 129 (E.D. Pa. 1978). Henning does not quote a single provision of the CARES Act, much less point to language that "speaks directly" to common-law rules.  Nor could she.  The statute simply directs the SBA to establish "limits" on agent fees.  15 U.S.C. § 636(a)(36)(P)(ii).  And the regulations, for their part, merely provide that PPP agents will be paid, if at all, by lenders.

In short, in recognition of these common-law (and common-sense) principles, the statute and regulations leave it to the lender and the agent to agree as to whether a fee will be paid and, if so, what that fee will be (subject to the regulatory cap).  Henning's complaint ignores these governing principles both by demanding agent fees absent an agreement and by insisting on the maximum fee allowed.  Her claims thus fail as a matter of law and must be dismissed.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER PENNSYLVANIA LAW.

Henning also brings a variety of Pennsylvania common-law and statutory claims all predicated on her alleged right to agent fees under the CARES Act and related regulations. However, Henning may not circumvent the absence of a private right of action under the CARES Act through state-law claims; to hold otherwise would, as courts have held in analogous contexts, "render[] meaningless" the "absence of a private right."  *See Astra USA, Inc.* v. *Santa Clara Cty., Cal.*, 563 U.S. 110, 118 (2011); *see also Umland* v. *PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 66-67 (3d Cir. 2008) (affirming dismissal of breach of contract claims where "[plaintiff's] complaint attempts to use state common law to circumvent the absence of a private

right of action under FICA."). Henning's common-law claims should therefore be dismissed on

that basis alone. As set forth below, there are numerous independent reasons to dismiss them as

well.

       A.      **Plaintiff Fails to Plead a UTPCPL Violation.**

      Henning's UTPCPL claim fails because she alleges she was a PPP *agent*, not a

*consumer*.[12] To bring a private enforcement action under Pennsylvania's UTPCPL, plaintiffs

must allege that they "purchase[d] or lease[d] goods or services" and that they did so "primarily

for personal, family or household purposes." 73 Pa. Stat. Ann. § 201-9.2(a); *see also Kornea* v.

*J.S.D Mgmt., Inc*., 366 F. Supp. 3d 660, 670 (E.D. Pa. 2019) (dismissing with prejudice

plaintiff's UTPCPL claim regarding purchase of business advertising services: " . . . an

individual who incurs damages as a result of such unfair or deceptive acts may file suit only if

they purchased goods or services 'primarily for personal, family or household purposes';

purchases made for business reasons are not protected.").[13] Plaintiff does not allege that she

---

[12] UTPCPL differentiates between actions brought "in the public interest" by the Pennsylvania Attorney General on behalf of the Commonwealth and private actions brought by consumers. *See* 73 Pa. Stat. Ann. §§ 201-4; 201-9.2. Actions brought by the Attorney General seek to enjoin unfair or deceptive practices, while private actions aim to compensate consumers for "actual damages." *See id.; see also Lewis* v. *Atlantic States Ins. Co.*, No. CV 08-1040, 2008 WL 11342459, at *3 (W.D. Pa. Nov. 10, 2008) (noting that § 201-9.2 "is restricted to claims that are legitimately of a consumer nature").

[13] *See, e.g.*, *Balderston* v. *Medtronic Sofamor Danek, Inc*., 285 F.3d 238, 242 (3d Cir. 2002) (affirming district court's ruling that plaintiff who purchased supplies for his medical practice lacked standing under UTPCPL: "In construing claims under the CPL, Pennsylvania courts have distinguished purchases made for business reasons, which are not actionable, from those made for 'personal, family or household use.'"); *Catania* v. *Zurich Am. Ins. Co.*, No. CV 13-1278, 2014 WL 12599599, at *4 (W.D. Pa. June 16, 2014) (dismissing UTPCPL claim with prejudice because the CPL "'unambiguously permits only persons who have purchased or leased goods or services to sue'" and plaintiff was not a purchaser or lessor under the statute) (quoting *Katz* v. *Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992)); *Novinger Grp., Inc.* v. *Hartford Ins., Inc.*, 514 F. Supp. 2d 662, 670 (M.D. Pa. 2007) (finding that plaintiffs lacked standing under the CPL because plaintiffs purchased polices for business rather than personal, family, or household purposes).

purchased goods or services, much less that she did so for personal, family or household purposes.  On the contrary, she alleges that she *provided* a service.  Her claims therefore fail on both counts, and her UTPCPL claim must be dismissed.

Even if Henning had standing to assert a UTPCPL claim, her claim would fail because she does not allege facts showing she "justifiably relied" on defendants' "wrongful conduct."  *See Yocca* v. *Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004); *see also Kern* v. *Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1290 (Pa. Super. 2015) ("Section 201-9.2 of the UTPCPL . . . requires that justifiable reliance be pled.").  Henning does not allege that she relied on PNC's, or any other lender's, conduct—quite the opposite.  She alleges that defendants "have uniformly refused to pay agent fees" and that they "set up the application process *without even asking* the borrower if they utilized the assistance of an agent."  *See* Compl. ¶¶ 36, 69.  Henning does not (and cannot) point to any action by any lender inducing her to provide services to PPP borrowers.  Henning chose to perform anyway, and thus her UTPCPL claim must be dismissed.  *See Yocca*, 854 A.2d at 502 (affirming dismissal where facts pled demonstrated that "any reliance . . . was *not* justifiable") (emphasis in original).

**B.      Plaintiff Fails to Plead Conversion.**

Henning's conversion claim fails because she cannot establish a legal entitlement to agent fees from PNC or any other lender.  Under Pennsylvania law, the elements of conversion are:  (1) "deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith," (2) "without the owner's consent," and (3) "without lawful justification."  *Pioneer Commercial Funding Corp.* v. *American Fin. Mortg. Corp.*, 855 A.2d 818, 827 (Pa. 2004).  Moreover, to allege conversion, Henning "must have had an immediate right of possession of the property at the time it was allegedly converted."  *Steffy* v. *Liberty Life Assur. Co. of Bos.*, No. CIV.A. 09-0538, 2010 WL 1526477, at *3 (W.D. Pa. Apr.

15, 2010) (citations and quotations omitted).  "Pennsylvania courts disallow conversion claims where an immediate right to possession is lacking."  *Leonard A. Feinberg, Inc.* v. *Central Asia Capital Corp., Ltd.*, 974 F. Supp. 822, 845 (E.D. Pa. 1997) (rejecting conversion claim where no immediate right to possession existed).  As detailed above, absent an agreement with a lender, Henning has no right to "property" in the form of compensation in connection with PPP loans.  Because she does not allege any such agreement, her conversion claim must be dismissed.

       C.      **Plaintiff Fails to Plead Breach of Contract.**

Similarly, Henning's claim for breach of contract fails because she cannot establish that PPP lenders have any obligation to pay agent fees under their contracts with the SBA.  To establish a breach of contract claim under Pennsylvania law, a plaintiff must show:  "(1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages."  *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.* v. *Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).  Henning alleges that lenders are "violating the terms of their agreement" with the SBA because (1) the agreement requires lenders to "adhere to all PPP rules and regulations," (2) "[t]he SBA's PPP regulations specifically require that PPP lenders pay the fees of any 'agent,'" and (3) lenders have "refus[ed] to pay fees."  Compl. ¶¶ 68-70.  However, as detailed above, neither the CARES Act nor the PPP-related guidance requires lenders to pay unauthorized agents.  Thus, Henning cannot establish a breach of contract.

Even if Henning could establish a breach, she cannot show any entitlement to recover as an "intended beneficiar[y]."  *Id.* ¶ 69 (claiming, without citation, that *agents*, not borrowers, were the "intended beneficiaries" of lenders' agreements with the SBA).  Plaintiff attempts to divine an intent to make agents third-party beneficiaries of an alleged agreement by lenders to follow SBA rules, but such a general claim cannot satisfy the requirement under

Pennsylvania law that "(1) the recognition of the beneficiary's right must be 'appropriate to effectuate the intention of the parties' and (2) the performance must 'satisfy an obligation of the promisee to pay money to the beneficiary' or 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" *Estate of Agnew* v. *Ross*, 152 A.3d 247, 252-53 (Pa. 2017) (citations omitted). Moreover, "'[w]hen a governmental contract is at issue, the test for whether a member of the public is a third-party beneficiary must be strictly applied.'" *Medevac MidAtlantic, LLC* v. *Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 531 n. 111 (E.D. Pa. 2011) (quoting *Drummond* v. *Univ. of Pennsylvania*, 651 A.2d 572, 578 (Pa. Commw. Ct. 1994)). To recover, "[t]here must be language evincing an intent that the party contracting with the government will be held liable to third parties in the event of nonperformance." *Liem Duc Nguyen* v. *U.S. Catholic Conference*, 548 F. Supp. 1333, 1348 (W.D. Pa. 1982), *aff'd*, 719 F.2d 52 (3d Cir. 1983). Because Henning does not (and cannot) point to any such language, her breach of contract claim must be dismissed.

   **D.**  **Plaintiff Fails to Plead Unjust Enrichment.**

     The only remaining claim is for unjust enrichment under Pennsylvania law. Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." *Burrell* v. *W.C.A.B. (Philadelphia Gas Works & Compservices, Inc.)*, 849 A.2d 1282, 1288 (Pa. Commw. Ct. 2004). To establish an unjust enrichment claim, a plaintiff must allege: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff." *EBC, Inc.* v. *Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010). Henning's complaint does not meet this standard.

There is nothing "unjust" about defendants' retention of a potential benefit here. That standard is exacting:  plaintiffs must show that "the party against whom recovery is sought either wrongfully secured or passively received a benefit that . . . would be *unconscionable* for [it] to retain."  *EBC, Inc.*, 618 F.3d at 273; *see also Limbach Co., LLC* v. *City of Philadelphia*, 905 A.2d 567, 577 (Pa. Commw. Ct. 2006) ("The polestar of the unjust enrichment inquiry is whether the defendant has been *unjustly enriched*; the intent of the parties is irrelevant.") (emphasis in original).  The complaint does not meet that high bar for several reasons.

First, Henning is not entitled to fees under the CARES Act or the SBA regulations, and she knew or should have known that before performing any work.  Although she claims that she "provided assistance" to PNC's PPP loan borrowers, Henning does not allege that anyone promised to pay for her services or that PNC sought her assistance.  Compl. ¶ 51.  Nor does she allege that she *asked* anyone to pay for her services.  Where, as here, an offer to do something "was not conditioned upon payment of any kind," nor was any suggestion made, either expressly or by implication, of an expectation to be paid, an unjust enrichment claim fails.  *Martin* v. *Little, Brown & Co.*, 450 A.2d 984, 988 (Pa. Super. 1981) (rejecting unjust enrichment claim because plaintiff "was purely a volunteer" who was not entitled to restitution).  "As a general rule, volunteers have no right to restitution."  *In re Beltrami*, 324 B.R. 255, 276 (Bankr. M.D. Pa. 2005); *see also* Restatement (First) of Restitution § 2.

Second, it is not "unconscionable" for defendants to refuse to pay fees that they said they would not pay or never agreed to pay (and that are statutorily due to them).  For example, PNC stated in no uncertain terms that it "will not pay" PPP agent fees.  And Henning, as a certified public accountant, should have been aware of the AICPA's advice that potential agents "discuss this issue with clients and the banks to ensure there is an understanding,

preferably in writing, as to how and when any fees will be paid." Ex. 1. Henning apparently did not heed these warnings and chose to perform anyway.[14] Thus, even if defendants "benefit[ted] from the act[s] of [Henning]," the unjust enrichment claim fails because defendants did not "mislead[]" her. *Limbach*, 905 A.2d at 575-76.

Third, Henning does not plead any facts showing that defendants were aware of her alleged work or knowingly acquired any benefit from it. As noted, Henning does not allege that she ever communicated with any PPP lender—she does not claim to have sought authorization from any lender, that her actions were in fact authorized by any lender, or that she even *requested* compensation from any lender. This fact alone requires dismissal of her claim because unjust enrichment requires knowledge, or appreciation, of the benefit by the defendant. *See, e.g.*, *American Fed'n of State Cty. & Mun. Emps., Dist. Council 47 Health & Welfare Fund* v. *Ortho-McNeil-Janssen Pharm., Inc.*, 857 F. Supp. 2d 510, 514 (E.D. Pa. 2012) (noting that, to establish an unjust enrichment claim, plaintiff must show that defendant "knew of the benefit"); *see also Correll* v. *Millville Area Sch. Dist.*, 662 A.2d 696, 701 n.3 (Pa. Commw. Ct. 1995) (noting that a "defendant must appreciate or have knowledge of the benefit" for an unjust enrichment claim to survive).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[14] Indeed, because Henning's purported injuries were self-inflicted, there are serious questions about her standing to bring any claims at all. *See, e.g.*, *Kaymak* v. *AAA Mid-Atl., Inc.*, No. CIV.A. 10-6532, 2012 WL 3887040, at *5 (E.D. Pa. Sept. 7, 2012), *aff'd*, 529 F. App'x 222 (3d Cir. 2013) (dismissing complaint for lack of standing because "a self-inflicted injury, such as this was, falls short of establishing standing.").

Dated:  July 17, 2020

/s/ Perry A. Napolitano

Perry A. Napolitano (Pa. I.D. No. 56789)
Justin J. Kontul (Pa. I.D. No. 206026)
REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone:  (412) 288-3131
E-mail:  pnapolitano@reedsmith.com
E-mail:  jkontul@reedsmith.com

Jonathan M. Moses (*pro hac vice* pending)
Jeohn Salone Favors (*pro hac vice* pending)
Brittany A. Fish (*pro hac vice* pending)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
E-mail:  JMMoses@wlrk.com
E-mail:  JFavors@wlrk.com
E-mail:  BAFish@wlrk.com

*Counsel for Defendants PNC Financial Services
Group, Inc. and PNC Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2020, I electronically filed the foregoing pleading with the Clerk of Court using the ECF system, which will send the notification of such filing to all registered counsel of record.

Respectfully submitted,

*/s/ Perry A. Napolitano*
Perry A. Napolitano

*Counsel for Defendants PNC Financial Services Group, Inc. and PNC Bank, N.A*