IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE M. HENNING, CPA LLC, individually and on behalf of all others similarly situated,<br>    Plaintiffs,<br><br>    v.<br><br>PNC FINANCIAL SERVICES GROUP, INC.; PNC BANK, N.A.; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No. 2:20-cv-00905-WSS<br><br>Judge William S. Stickman |

**DECLARATION OF PERRY A. NAPOLITANO
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I, PERRY A. NAPOLITANO, declare under the penalty of perjury and state as follows:

1. I am a partner at the law firm Reed Smith LLP and am counsel for defendants PNC Financial Services Group, Inc. and PNC Bank, N.A. in the above-captioned matter. I am over the age of eighteen, have personal knowledge of the facts set forth herein, and if called as a witness under oath, I could and would competently testify thereto. I submit this Declaration in support of Defendants' Motion to Dismiss.

2. I attach to this Declaration a true and accurate copy of a document referenced in Defendants' Motion to Dismiss.

3. Specifically, attached hereto as Exhibit 1 is a true and accurate copy of the April 22, 2020 Special Report published by American Institute of Certified Public Accountants ("AICPA") entitled, *Small Business Loans Under the Paycheck Protection Program: Issues Related to CPA Involvement*.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of July, 2020 in Pittsburgh, Pennsylvania.

                                                */s/ Perry A. Napolitano*
                                                Perry A. Napolitano

# EXHIBIT 1



Special Report
April 22, 2020

# Center for Plain English Accounting
AICPA's National A&A Resource Center

## Small Business Loans Under the Payroll Protection Program
## Issues Related to CPA Involvement

*By: Kristy Illuzzi and Jim Brackens*

The CPEA has received several questions regarding CPAs assisting clients with applications, including working as Agents under the definition of the CARES Act and the Paycheck Protection Program (PPP), which provides forgivable loans to help small businesses cover fees including payroll, mortgage expenses, rent, and utilities.

We know there is frustration around providing services to small business clients as they apply for PPP loans being issued through the Small Business Administration (SBA). The AICPA's Private Companies Practice Section (PCPS) has been adding developments daily to their [webpages](#), but we wanted to cover some of the more commonly asked questions and complexities that we have been hearing from members, including those related to acting as agents and whether performing certain services in association with these PPP loans would violate independence, create a conflict of interest, or result in receipt of a contingent fee.

First Things First: See the Bigger Picture and Advise Clients

Before we begin with the common issues surrounding the PPP loans, we want to offer this counsel to our members:

As clients deal with a cauldron of pandemic-imposed problems and uncertainties, and as they attempt to navigate a sea of government relief programs, CPAs must act as a trusted source of advice and guidance. Providing advice and guidance during challenging times is nothing new for CPAs. Businesses and organizations have deep relationships with their CPAs and normally look to them for assistance and reassurance. CPAs should step back and consider the best course of action for each client. Not every relief program or every course to maneuver through the arduous effects of the pandemic will fit every client. CPAs should take a thoughtful approach in helping each client find the financial assistance, loan and tax credit relief programs, and other solutions that make the most sense for each

client's unique circumstances. We encourage CPAs to provide these advisory services which are deemed to be outside the scope of loan processing application assistance as referred to within this report.

Acting as Agents and Agent Fees

One of the hottest topics related to these PPP loans is exactly what is intended by the term "agent" as used on the loan application. According to a Q&A document issued by the Treasury, an agent is an authorized representative and can be:

- An attorney
- An accountant
- A consultant
- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant
- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans
- A loan broker
- Any other individual or entity representing an applicant by conducting business with the SBA

There has been a lot of confusion as to whether CPA firms can act as agents for attest clients, and what acting as agents really entail. One of the key issues points to the fact that the Treasury defines an agent as an "authorized representative," which could imply that an agent is taking on a level of management responsibility.

There has been much discussion about whether acting as an agent for purposes of PPP loans was intended to meet a legal definition of agent (acting on behalf of another) or was meant to be a broader definition that would scope in CPAs providing nonattest services to clients. The AICPA ethics division has been carefully monitoring developments and continues to answer questions, and the Professional Ethics Executive Committee (PEEC) was recently asked to weigh in on the issue from an independence perspective.

As posted in an update on April 13, 2020, the AICPA made the following statement (in part):

> "While the AICPA understands that a fee paid by a lender is referred to as an 'agent fee', we don't believe this should be an impediment to allowing CPAs to fulfill the intent of the CARES Act. Rather, the AICPA's Professional Ethics Executive Committee (PEEC) believes members may advise and assist their attest clients in understanding the information required to be submitted and in the determination of amounts to be included on the application, provided the member does not

prepare or sign the application form itself or perform other management responsibilities on behalf of the applicant."

**Practice Note:** CPAs should note, that even though the Treasury has outlined guidelines related to agency fees, there is a possibility that you will not be paid for your services, even when noting you are an agent to the application. Every bank seems to understand the rules regarding agents and fees a bit differently, and some are agreeing to pay CPAs for assisting while others are not agreeing to pay CPAs for assisting. It is important to discuss this issue with clients and the banks to ensure there is an understanding, preferably in writing, as to how and when any fees will be paid.

It is our understanding that many firms do not intend to charge clients for the PPP application process for several reasons:

- It is in the firm's interest that clients weather the economic crisis caused by the pandemic. Helping clients get any assistance possible will strengthen long-term relationship with clients.
- The application itself is fairly straight forward and can be completed by the small business. The only challenge is determining the average monthly payroll cost.
- Average payroll costs can easily be derived by any third-party payroll provider, plus any benefits the small business pays that comes from the general ledger. Payroll companies are not charging customers for this work.
- The PPP asks for a self-certification from the business and <u>not</u> any type of certification from the CPA, as may be the case in other loan packages. CPAs should not be providing any certification, as it isn't required according to the guidelines.

**CPEA Observation:** An additional complication is whether banks, in agreeing to pay CPAs for services, infer that CPAs are taking on certain client representations that could result in placing CPAs at risk. Some banks are agreeing to pay CPAs without requiring them to sign as authorized representatives (i.e., agents under the Code of Federal Regulations definition). However, it's possible those banks may assume CPAs are taking on certain client representations. The AICPA is working with the SBA, the American Bankers Association, and other key stakeholders to clarify this issue. However, in the interim, CPAs could be putting themselves at risk as some banks could make an assumption that paying CPA firms agent fees means they are acting as "authorized agents" or "authorized representatives" of attest clients. CPAs are encouraged to consult with professional liability carriers or legal counsel to understand any legal implications.

Contingent Fee Question Clarified

Some have asked whether fees set by Treasury to be paid to agents could be considered contingency fees under ET section 302 of the AICPA's Code of Professional Conduct. As a refresher, paragraph .01 of ET section 302 indicates the following:

> "A contingent fee is a fee established for the performance of any service pursuant to an arrangement in which no fee will be charged unless a specified finding or result is attained, or in which the amount of the fee is otherwise dependent upon the finding or result of such service. Solely for purposes of this rule, fees are not regarded as being contingent if fixed by courts or other public authorities, or, in tax matters, if determined based on the results of judicial proceedings or the findings of governmental agencies."

The AICPA made a statement on April 13, 2020, that they believe, considering substance over form, the fee paid by lenders is *not* a contingent fee. The amount of the loan is an objective mathematical calculation (based on payroll) with the amount of the fee set by the CARES Act. In addition, it is Congress' intent that all loans will be funded, so there is no need for any advocacy by anyone assisting the attest client to convince the lender to make the loan.

***CPEA Observation:*** While the AICPA has indicated they do not believe the fee paid by lenders would be considered a contingent fee, some state boards of accountancy could believe otherwise. We encourage CPAs to check with state boards before agreeing to accept agent fees to ensure there is agreement with the AICPA position.

Additional Independence Considerations

As noted earlier, CPAs may advise and assist attest clients in gathering information for the attest clients to prepare and submit loan applications to lenders without impairing independence. Additionally, if lenders pay CPAs "agent fees" for those services, CPAs are not, simply by nature of receiving fees, agents – nor does receipt of these fees constitute contingent fees.

PEEC believes that, simply advising or assisting attest clients in understanding the information gathering and lending application process under the PPP, even if "agent fees" are paid by lenders, would not constitute performing management responsibilities for purposes of applying the AICPA Code of Professional Conduct if CPAs do not in fact assume management responsibilities. In other words, assisting attest clients with COVID-19 PPP loan applications is a nonattest service. If CPAs comply with the interpretations of the [Nonattest Services](#) subtopic, independence will not be impaired.

Special Considerations Related to Assisting Attest Clients

As noted earlier, for attest clients, we suggest not signing as authorized representatives on PPP loan applications. Also, make no certifications as to the information the small business is providing with the application (this is covered in more detail in the "Other Requests of CPAs" section of this report). However, advising clients is totally appropriate, and we encourage it.

For opportunities to receive "agent fees" from banks for performing nonattest services related to client loan applications, we suggest considering contacting lenders before embarking on engagements and getting a written agreement related to the fees. There should be a conflict waiver in the agreement with the lender, just like there is in the loan assistance engagement letter with the client. Disclose these arrangements with clients as well.

The majority of the certifications and authorizations contained in the "Representations, Authorizations and Certifications" section of the PPP loan application are management responsibilities; the signature required on page 2 of the application should be made by the company applying for the loan or its authorized representative.

As noted earlier, signing as a client's authorized representative will impair independence because ability to exercise authority on behalf of a client has been accepted. This is a management responsibility.

Special Considerations Related to Nonattest Clients

For situations where CPAs choose to act as authorized representatives and receive agent fees from banks for nonattest clients, we suggest considering the following:

- Contact lenders before embarking on engagements and get written agreements related to the fees. There should be a conflict waiver in the agreement with the lender, just like there is in the loan assistance engagement letter with the client. Disclose these arrangements with clients as well.
- Generally, firms do not sign client loan applications. In instances where firms sign these applications, hold harmless/indemnification agreements from the clients related to client-provided information should be obtained, and should indicate the firm is not making or joining the client in making any of the client's certifications in the application. Many professional liability insurance carriers have examples of this language.
- Whether clients later may ask for attest services to be performed in conjunction with these PPP loans. See the practice note in the "Loan Reporting Considerations" section for additional information.

*Practice Note:* Before signing PPP loan applications for nonattest clients, firms may want to consult with professional liability carriers or legal counsel to understand any legal implications there might be for signing these applications. Some professional liability insurance carriers have even developed sample engagement letters related to these services that include indemnification clauses.

CPA Firms Applying for PPP Loans

It should be noted that CPA firms may be eligible to apply for PPP loans if all of the SBA requirements are met, whereby a CPA might be preparing and signing the loan application on behalf of the firm. As long as the bank is not an attest client of the firm, this would not result in an independence violation under the Code of Professional Conduct.

Other Requests of CPAs

A small number of banks are requesting some form of third-party verification related to the PPP loan applications when CPAs are involved. In circumstances where PPP lenders request this type of service of CPAs, reference should be made to the AICPA's *Third-Party Verification Toolkit for CPAs*.

Loan Forgiveness Considerations

Additional guidance is expected to be provided by Treasury to correctly determine the information required to substantiate that funds dispersed under these PPP loans were used in accordance with the SBA guidelines.

It is possible that entities will engage CPA firms to assist on the back end with the application for loan forgiveness as well, especially in cases where the CPAs assisted in some way with the initial application.

It could be that clients simply would engage CPAs to perform nonattest services, similar to how many of the loan applications are being done. However, when nonattest services are performed for attest clients (for example, an audit client), CPAs would need to follow Section 1.295, of the AICPA Code of Professional Conduct to not impair independence for purposes of attest engagements. If CPAs are not engaged to perform nonattest services, another option for service to attest clients would be to perform Agreed Upon Procedures (AUP) engagements in accordance with AT-C section 215.

For audits of financial statements for periods during which PPP loan transactions occurred, it goes without saying that those transactions should be audited and the auditor's risk assessment may likely identify heightened fraud risk in this area.

*Practice Note:* One thing to consider when performing services in association with loan applications is whether clients would expect any attest services on the back end when

reporting to the bank. CPAs should be aware, if they choose to perform certain services related to these loan applications that would impair independence, they would not be permitted to perform any attest services on the back end with regard to reporting on how the loan proceeds were spent and whether that spending was in accordance with the SBA guidelines.

Conclusion and Additional Resources

The CPEA will continue to monitor issues and questions related to the A&A impacts of COVID-19 and stand ready to issue additional guidance as new developments arise. The AICPA also has a [Coronavirus Resource Center](#) to keep the profession up-to-date on this issue, including information on business continuation, economic impact, workforce issues and other resources to help members serve their clients. View a [list of all available resources](#).

As always, the CPEA technical inquiry service is available for all CPEA members to answer inquiries on this topic as well as most other accounting and assurance topics. The inquiry service can be accessed on our website. For non-CPEA members, call the AICPA technical hotline at 1-888-777-7077.  Questions related to auditor independence (which certainly could arise in the current environment) should be directed to the AICPA Ethics Hotline at **1-888-777-7077** (select option 2, then 3) or ethics@aicpa.org.  CPEA refers all independence questions to the independence hotline.

---

Center for Plain English Accounting │ aicpa.org/CPEA │ cpea@aicpa.org

The CPEA provides non-authoritative guidance on accounting, auditing, attestation, and SSARS standards. Official AICPA positions are determined through certain specific committee procedures, due process and extensive deliberation. The views expressed by CPEA staff in this report are expressed for the purposes of providing member services and other purposes, but not for the purposes of providing accounting services or practicing public accounting. The CPEA makes no warranties or representations concerning the accuracy of any reports issued.

© 2020 Association of International Certified Professional Accountants. All rights reserved. For information about the procedure for requesting permission to make copies of any part of this work, please e-mail cpea@aicpa.org with your request. Otherwise, requests should be written and mailed to the Center for Plain English Accounting, AICPA, 220 Leigh Farm Road, Durham, NC 27707-8110.